Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, | Case No.: |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Violation(s) of Telephone Consumer Protection Act of 1991** |
| FINANCE OF AMERICA REVERSE LLC d/b/a AMERICAN ADVISORS GROUP/AAG, | |
| Defendant. | **Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.

- 1 -
Complaint

Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant FINANCE OF AMERICA REVERSE LLC d/b/a AMERICAN ADVISORS GROUP/AAG is, and at all times herein mentioned was, a Delaware Corporation, headquartered in the State of Texas, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "AAG").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose*

*residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from June 10, 2020 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. AAG is engaged in a scheme to sell reverse mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, AAG is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. In all AAG's calls to Plaintiff which he answered—detailed below—the caller self-identified as being with "AAG" or "American Advisors Group", so all calls appear to be made directly by AAG, however junk telemarketers sometimes use third party agents who use the master's name so, out of an abundance of caution, paragraphs below will allege alternative agency theories of liability even though it may not be in issue in this case.

10. The modus operandi is the same for all the calls in this case, AAG either directly or using an agent acting at the direction of AAG calls various numbers in the United States to sell AAG's services without regard to whether those numbers are on the Do Not Call Registry or not.

11. AAG and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

12. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

13. AAG has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

14. Defendants made twenty-nine (29) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their reverse mortgage services on the following dates and times and using the following Caller ID ("CID") numbers:

- 6/10/20, 3:57 pm, CID 323-275-5039
- 6/16/20, 6:00 pm, CID 949-674-2865
- 6/16/20, 6:01 pm, CID 949-674-2865
- 6/25/20, 7:27 pm, CID 949-674-2865
- 9/9/20, 3:21 pm, CID 949-674-1051
- 2/22/21, 4:45 pm, CID 949-224-3721
- 3/19/21, 9:32 am, CID 949-224-3721
- 3/23/21, 11:58 am, CID 949-224-3721
- 3/25/21, 9:59 am, CID 949-224-3721
- 4/7/21, 12:45 pm, CID 949-224-3721
- 4/9/21, 9:22 am, CID 949-224-3721
- 4/28/21, 10:51 am, CID 949-224-3721
- 5/7/21, 11:58 am, CID 949-224-3721
- 6/24/21, 9:10 am, CID 949-224-3721
- 7/13/21, 1:10 pm, CID 949-224-3721
- 7/22/21, 9:13 am, CID 949-224-3721

Complaint

- 8/3/21, 9:24 am, CID 949-224-3721
- 1/5/23, 9:55 am, CID 323-275-5039
- 1/5/23, 1:55 pm, CID 323-275-5039
- 1/9/23, 8:59 am, CID 323-275-5039
- 1/16/23, 2:23 pm, CID 323-275-5039
- 1/19/23, 9:54 am, CID 323-275-5039
- 1/30/23, 2:59 pm, CID 323-275-5039
- 3/1/23, 8:59 am, CID 323-275-5039
- 3/1/23, 12:20 pm, CID 323-275-5039
- 3/2/23, 4:58 pm, CID 323-275-5039
- 3/3/23, 2:02 pm, CID 323-275-5039
- 3/6/23, 9:22 am, CID 323-275-5039
- 3/6/23, 2:46 pm, CID 323-275-5039

15. Mr. Sapan made a log of all the calls he received from AAG during or shortly after receiving the calls which includes the date and time of the call as well as brief notes about what happened during the calls.

16. This call log is attached to this Complaint as Exhibit 1, and is incorporated herein as if set forth verbatim.

17. The all calls illegally blocked transmitting Caller ID Name information. *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

18. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago.

19. Mr. Sapan registered his residential line on the National "Do-Not-Call" Registry on December 22, 2007 and Mr. Sapan has kept his residential line on the Registry from that time to the present.

20. Mr. Sapan never gave any AAG or any other person, agent, employee or entity associated with AAG express written permission to call him, nor does he

have an established business relationship nor personal relationship with AAG or any other person, agent, employee or entity associated with AAG.

21. On the first call on June 10, 2020, the caller, who self-identified as being with "AAG", falsely stated that Mr. Sapan had requested information through one of their unnamed "partners" and said she would bring her loan advisor on the line.

22. Since this was the first call Mr. Sapan ever received from AAG and the acronymic name is possibly somewhat vague, Mr. Sapan stayed on the line to determine the exact identity of this illegal caller while looking them up online at the same time.

23. The AAG call representative brought someone on the line who self-identified as "Nurmeen", or something close to that name, who said she was with "American Advisors Group" or AAG again.

24. Mr. Sapan had looked up AAG online during the call and saw they were headquartered in Irvine, California, so he asked "Numeen" if the company was in Irvine, and she confirmed that it was.

25. Having confirmed the identity of the telemarketer, Mr. Sapan told "Nurmeen" he was not interested and hung up.

26. Contrary to what the initial caller said, Mr. Sapan had never requested reverse mortgage or reverse mortgage services from AAG nor any partner of theirs.

27. Mr. Sapan never agreed to any callbacks at any point during this first call nor any subsequent calls, nor did he express interest in AAG's reverse mortgage services at any point prior to the illegal calls starting.

28. On the second call a few days later on June 16, 2020, the caller self-identified as "Nurmeen" from AAG again, however before Mr. Sapan could again say he was not interested, the call suffered some sort of technical glitch and terminated.

29. On the third call made a minute or so later on June 16, 2020, the caller self-identified as "Nurmeen" from AAG again, and left a voicemail message since Mr. Sapan did not answer.

30. Mr. Sapan missed the fourth call on June 25, 2020, however it used the same CID number as the second and third calls, 949-674-2865.

31. On the fifth call a few months later on September 9, 2020, the caller used a CID number with the same area code and prefix but different last four numbers from the previous calls from AAG, so Mr. Sapan answered to be sure of who was calling and as soon as he picked up the caller self-identified as "Wes with American Advisors Group".

32. Since Mr. Sapan now felt confident he knew this junk caller's identity, he therefore hung up so they could not waste any more of his time.

33. On the sixth call some months later on February 22, 2021, the caller used a new CID number (949-224-3721), so Mr. Sapan answered, however, as soon as he picked up the caller self-identified as "Chris with American Advisors Group" and Mr. Sapan knew it was more of the same junk calls just using a new CID number.

34. Since Mr. Sapan now felt confident he knew this junk caller's identity, he therefore hung up so they could not waste any more of his time.

35. Each of the remaining twenty-three (23) calls made thereafter used the exact same CID number as one of the calls Mr. Sapan had answered wherein the caller self-identified as being with AAG.

36. Plaintiff alleges on information and belief that the calls he did not answer were made by AAG because they used the exact same CID numbers used in calls he did answer and the caller self-identified as being with AAG in each of the calls from the same CID's which he did answer.

37. In the alternative, but for the same basic reasons, Plaintiff alternatively alleges on information and belief that the calls which he did not

Complaint

answer alleged herein were calls made by a person or entity acting on behalf of AAG and using AAG's name to sell AAG's services.

38. Plaintiff alleges on information and belief that AAG transmitted the calls he did not answer to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to sell their reverse mortgage services just like they did in the previous calls.

39. All of the calls were made either by AAG directly or "on behalf of" AAG within the meaning of 47 U.S.C. 227(c)(5) because the point of all the calls was to sell AAG's reverse mortgage services.

40. Plaintiff pleads on information and belief that to the extent AAG may have relied on any agent or other entity to begin telemarketing calls on its behalf, AAG had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

41. Alternatively, Plaintiff pleads on information and belief that to the extent AAG may have relied on any agent or other entity to begin telemarketing calls on its behalf, AAG hired that agent to interact with the public on AAG' behalf using AAG' name when they brought the AAG sales person into the illegal call and therefore gave implied authority to represent AAG.

42. Alternatively, Plaintiff pleads on information and belief that AAG ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

43. AAG may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

/ / /

/ / /

## DIRECT LIABILITY OF AAG

44. As detailed above, Plaintiffs pleads that CIDs, 323-275-5039, 949-674-2865, and 949-674-1051 all belonged directly to AAG at the time of the calls alleged herein and that AAG directly made the calls associated with these CIDs.

45. Plaintiff pleads on information and belief that all calls made from CIDs, 323-275-5039, 949-674-2865, and 949-674-1051 were made by direct employees of AAG.

46. Plaintiff pleads on information and belief that the officers, managers and employees for AAG knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person and used a technically sophisticated calling system that could illegally hide Caller ID Name which indicates that this was an intentional and organized corporate sales effort and not a rogue employee or random event.

## AGENT LIABILITY ALLEGATIONS

47. Plaintiff notes that in every call he answered every caller self-identified as being with "AAG" or the long-form "American Advisors Group", so if they were agents, they were using the master's business name during every interaction with Plaintiff.

48. Thus, Plaintiff alternatively pleads on information and belief that to the extent AAG may have relied on any agent or other entity to make telemarketing calls on its behalf, AAG had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct AAG representatives into the call to attempt to complete the sale.

49. Alternatively, Plaintiff pleads on information and belief that to the extent AAG may have relied on any agent or other entity to make telemarketing calls on its behalf, AAG hired that agent to interact with the public on AAG' behalf and therefore gave implied authority to represent AAG.

50. Alternatively, Plaintiff pleads on information and belief that AAG ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

51. Plaintiff pleads on information and belief that to the extent AAG uses any agents to make calls, AAG has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

52. Plaintiff pleads on information and belief that to the extent AAG uses any agents to make calls, AAG knew or reasonably should have known that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

53. Plaintiff pleads on information and belief that to the extent AAG uses any agents to make calls, AAG explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

54. Plaintiff pleads on information and belief that to the extent AAG uses any agents to make calls, AAG explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of AAG.

/ / /

/ / /

# "ON BEHALF OF" LIABILITY ALLEGATIONS

55. Plaintiff pleads that all calls complained of above were made "on behalf of" AAG within the meaning of those words as used in title 47 of the United States Code section 227(c)(5): "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

56. Plaintiff contends that "on behalf of" liability is a lesser standard than traditional agency liability.

57. Plaintiff pleads on information and belief that AAG hired, retained, instructed or allowed any entity or person who made the alleged calls to makes those calls on behalf of AAG in order to sell AAG's financial products.

58. Additionally, any call which was transferred to an employee of AAG was made on behalf of AAG to sell their services.

59. Plaintiff pleads on information and belief that "Ashley with the Housing Assistance Center", "Amy from Mortgage Help", "John from Reverse mortgage", "Mike with American Financial", and "Sean with American Financial" were hired, paid, retained, and/or engaged to make calls on behalf of AAG.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

60. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

61. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

62. Plaintiff has been harmed by these calls by the intrusion upon his privacy by callers who had no legal right to call his residential number.

63. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

64. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

65. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

66. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

67. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

68. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

# CLASS ACTION ALLEGATIONS

69. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from June 10, 2020 to the present, including up to and through trial.*

70. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

71. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

72. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the

exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

73. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

   a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

   b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

   c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

   d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

74. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

75. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting

this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

76. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

77. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

/ / /

/ / /

/ / /

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION: TCPA VIOLATION
## CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

78. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

79. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

80. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

81. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

82. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

83. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## PRAYER

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: June 5, 2024　　　　　　　　　　**PRATO & REICHMAN, APC**

　　　　　　　　　　　　　　　　　　/s/Christopher J. Reichman, Esq.
　　　　　　　　　　　　　　　　　　By: Christopher J. Reichman, Esq.
　　　　　　　　　　　　　　　　　　**Prato & Reichman, APC**
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff,
　　　　　　　　　　　　　　　　　　Paul Sapan and the putative class